MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

AMIE D. ROONEY (CABN 215324)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    FAX: (408) 535-5066
    Amie.Rooney@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR13-00374-JD |
| Plaintiff, | |
| v. | UNITED STATES' SENTENCING MEMORANDUM |
| OMAR "RICKY" NASR AHMAD, | Date: July 9, 2015<br>Time: 1:30 p.m.<br>Courtroom |
| Defendant. | |

Plaintiff United States of America, by and through its undersigned counsel, the United States Attorney's Office for the Northern District, hereby submits its position regarding sentencing of defendant OMAR "RICKY" NASR AHMAD ("Defendant") pursuant to Rule 32(b)(6)(B) of the Federal Rules of Criminal Procedure. This position is based on the attached Memorandum, the Pre-Sentence Report ("PSR"), the files and records of this case, and any argument to be presented at the sentencing hearing.

## BACKGROUND FACTS AND PROCEDURE

On June 12, 2013, a five-count Indictment was filed in the Northern District of California charging the defendant with two violations of 18 U.S.C. §§ 1591(a)(1) and (2) and 1594(a), Sex Trafficking of Children (Counts 1 and 2), two violations of 18 U.S.C. § 2251(a), Production of Child Pornography (Counts 3 and 4), and one violation of 18 U.S.C. § 2252(a)(2), Distribution of Child Pornography (Count 5). Defendant was arrested on August 7, 2013, and was arraigned before the magistrate judge that same day and ordered detained. On April 2, 2015, a superseding information was filed, charging defendant with a violation of 18 U.S.C. § 2422(a) – Coercion and Enticement of Travel for Prostitution, and defendant pled guilty to the superseding information pursuant to a plea agreement with the government under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. In connection with this guilty plea, defendant agreed to jointly recommend a sentence of 63 months' imprisonment and pay restitution to the victims as ordered by the Court at sentencing. For its part, the government agreed that it would dismiss all the counts of the indictment, all of which carry mandatory minimum terms of imprisonment of either 10 (Counts 1-2) or 15 years (Counts 3-5), at the time of sentencing.

## GUIDELINES CALCULATION

While the guidelines are only advisory, the Court is still required to determine the accurate sentencing guidelines calculation and consider them as part of the 3553(a) factors. The Probation Office has determined that defendant's adjusted offense level is 25. This calculation is arrived at in the following manner:

| | | |
|---|---|---|
| Base Offense Level : | 24 | [U.S.S.G. § 2G1.3(a)(4)] |
| Specific Offense Characteristics | | |
| Use of a computer : | +2 | [U.S.S.G. § 2G1.3(b)(3)(A)] |
| Commercial Sex Act : | +2 | [U.S.S.G. § 2G1.3(b)(4)(B)] |
| Acceptance of Responsibility : | -3 | [U.S.S.G. § 3E1.1(a) and (b)] |
| Adjusted Offense Level : | 25 | |

(PSR ¶¶ 19-29). Defendant's criminal history score is three, and his criminal history category is II. (PSR ¶¶ 31-35). Thus, the advisory guidelines range for a recommended sentence is 63 to 78 months. (PSR Guideline Summary). The government agrees with the PSR's findings and calculations.

## GOVERNMENT'S POSITION REGARDING DEFENDANT'S OBJECTIONS

### A. Objection No. 1:

Defendant has objected to the inclusion of certain facts in the presentence report, contending that any factual allegations from the government which served as the basis for the original indictment is not properly included since it does not serve as the basis for the count to which defendant has pled guilty. The government concurs with the Probation Officer's response that no such limitation is required or, indeed, permitted. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court may receive and consider for the purpose of imposing an appropriate sentence.").

Under 18 U.S.C. § 3661, the Court may appropriately consider allegations in pending untried indictment, information concerning crimes for which defendant had been indicted, but was neither tried nor convicted, and, in some cases, evidence with respect to crimes of which defendant had been acquitted. *See United States v Young Ji Chung,* 71 F. Supp. 2d. 66, 69 (N.D.N.Y. 1999) ("[E]videntiary standards at sentencing hearings are less restricted than those applicable during trial, and as long as information that sentencing judge considers has sufficient indicia of reliability to support its probable accuracy, court may properly consider hearsay statements, evidence of uncharged crimes, dropped counts of indictment, and even alleged criminal activity resulting in acquittal when determining sentencing."), *citing United States v. Watts*, 519 U.S. 148 (1997); *see also United States v. Lindsey*, 482 F.3d 1285, 1294 (11th Cir. 2007) (noting that "*Booker* does not forbid a district court from considering criminal acts for which a defendant has not been charged or has been acquitted as long as those acts are proved by a preponderance of the evidence"); *United States v. Quincoces*, 503 Fed. Appx. 800, 804, 2013 U.S. App. LEXIS 651, *9-10, 2013 WL 129570 (11th Cir. Fla. 2013); *United States v. Vanderwerfhorst*, 576 F.3d 929, 935, (9th Cir. 2009) ("[A] sentencing judge 'may appropriately conduct an inquiry broad in scope, largely unlimited as to the kind of information he may consider, or the source

from which it may come.'") (internal citations omitted); *accord United States v. Showalter*, 569 F.3d 1150, 1159 (9th Cir. 2009). "[H]earsay evidence of unproved criminal activity not passed on by a court," for example, "may be considered in sentencing." *Farrow v. United States*, 580 F.2d 1339, 1360 (9th Cir. 1978); *see also United States v. Romero-Rendon*, 220 F.3d 1159, 1163 (9th Cir. 2000) (holding that the district court may rely on an uncontroverted PSR to establish the factual basis for a sentencing enhancement).

Furthermore, under the advisory Sentencing Guidelines: "in resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indices of reliability to support its probable accuracy." U.S.S.G. § 6A1.3. Following a letter request from the probation office, the government provided the probation officer with the discovery materials previously provided to the defendant, including but not limited to, hundreds of pages of agent and officer reports, sworn affidavits, and recorded interviews of witnesses including the victims and other third parties. The information contained in paragraphs 7-12 of the PSR is a reasonable and truncated summary of the government's evidence. Other than his statement that he has not admitted to these facts, defendant has offered no contravening statement. [PSR, ¶ 17.] Bare assertions are an insufficient basis for the Court to find that the government's evidence is unreliable. *See United States v. Kimball*, 975 F.2d 563, 567 (9th Cir. 1992) ("One cannot allege that 'there are mistakes and then stand mute without showing why they are mistakes.'") (*quoting United States v. Roberson*, 896 F.2d 388, 391 (1990)); *see also Vanderwerfhorst*, 576 F.3d at 936.

In defendant's sentencing memorandum, recently filed, he contends that *all* of the information is unreliable because one of the minor victims is alleged to have pretended to be his twin brother on a particular occasion, while ignoring the reams of corroborating information in the government's possession. While it is true that in the plea agreement signed by the parties, the government has agreed, *once defendant is sentenced*, to dismiss the outstanding charges in the Indictment, it is entirely disingenuous for defendant to claim, that those charges and the government's investigation of the case have no relevance to the Court in determining whether to accept the parties' proposed resolution and sentence the defendant accordingly. It bears noting that Paragraph 9 of defendant's plea agreement

contains his express understanding that both the government and the probation office will provide the Court with "all information relevant to the charged offense *and* the sentencing decision" without qualification. For example, Paragraph 8 describes how victim A.O. met and interacted with defendant, including how they had sexual contact on multiple occasions and how defendant enticed A.O. to engage in prostitution activities, leading to defendant "posting" A.O. on various websites. These facts are *directly* relevant to the sentencing decision as they are included in the agreed-upon sentencing characteristics in the guideline calculation. Similarly, the information contained in Paragraph 9 informs the court about the meeting and interactions between victim J.O. and defendant, describing the sexual contact between them and the travel for prostitution that J.O. engaged in at defendant's behest. Paragraphs 10 and 11 contain information that has been corroborated both by the statements on third-parties (i.e., not the minor victims themselves whose credibility defendant now questions) as well as through documentary evidence (chiefly, text messages) obtained by the government and provided to defendant and the probation office. Paragraph 12 contains further information regarding the sexual contact at issue and has also been verified by reliable documentary evidence, as well as the testimony of law enforcement officers. There is simply no basis for defendant's objection, let alone the wholesale exclusion of this highly relevant information regarding the defendant's criminal conduct in this case.

Moreover, the government does not believe that the information should be excluded under Rule 32(b)(3)(C), as requested by the defendant, for the reasons stated by the probation officer. The material included in the report is minimally descriptive of the thousands of pages of discovery material. The Court should deny this objection.

**B.     Objection No. 2:**

By this objection, defendant requests that the Probation Officer address the subject of the tier of sex offender registration to which he will be assigned. The probation officer has responded, correctly in the government's view, that the statutes governing sex offender registration are directions to the individual states to maintain registries that comply with Congressional directives. *See* 42 U.S.C. § 16091. Each state, however, has developed its own specific set of standards and requirements which may be more onerous or restrictive than the minimum standards proscribed by Congress. The probation officer and this Court cannot pre-direct a jurisdiction on how to classify a registrant, particularly where,

as in California, there is no tier system under state law.

## GOVERNMENT'S POSITION REGARDING SENTENCE

Probation has recommended that defendant should be sentenced to 63 months' incarceration, plus 7 years of supervised release. The government agrees with the Probation Office that defendant's crimes are extremely serious and warrant this significant period of incarceration. Pursuant to Title 18, United States Code Section 3553(a), the Court must impose a sentence sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offenses, afford adequate deterrence to criminal conduct, protect the public from further crimes by the defendant, and provide the defendant with correctional treatment. These factors warrant a significant period of incarceration.

The United States respectfully requests this Court accept the plea agreement submitted under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The parties have agreed to a binding sentence below the 10 or 15-year mandatory minimums which would be applicable had the government prevailed at trial on the original charges, but still representing a significant sentence to this defendant of over 5 years imprisonment, at least 5 years of supervised release (with conditions to be fixed by the Court), a fine to be determined by the Court, and a $100 special assessment. Such a sentence is at the low-end of the advisory range of 63-78 months as identified by the Probation Office, and reflects, in the opinion of the government, a sentence that is sufficient, but not greater than necessary, to achieve the purposes of sentencing.

The government has agreed to this reduced sentence primarily to avoid the further trauma to the victims which a trial would have inflicted on the identical twin brothers, who in April 2015 celebrated their 20th birthday. Whether defendant chooses to acknowledge it or not, the fact remains that both of the victims were 15-years-old when they first encountered Mr. Ahmad, and each of them had sexual intercourse with Ahmad prior to terminating the relationship in late January 2013, while they were still minors. Throughout 2011 and 2012, the minor victims traveled with Mr. Ahmad, or at his direction, around the State of California in order to engage in commercial sexual activities. Mr. Ahmad has admitted through his guilty plea that he attempted to coerce or persuade the minor victims to travel with

him outside of the State of California for commercial sexual activities in Las Vegas, Nevada, although the interstate travel never occurred for the victims. Even though Mr. Ahmad does not admit that he knew they were minors he did concede, as he must, that the government can prove they were minors at the time of these activities. The government has ample evidence that defendant directed the minors in periodic prostitution, advertised them on the Internet, took videos of them engaged in sexual activity with him and, most tragically, each other, and posted the videos on the Internet as revenge for the minors going against him or "stealing" from him when they failed to provide him with money from a commercial sex act. As a result of these activities, the victims have suffered severe negative, life-long effects, including health consequences, and are finding it exceptionally difficult to put their lives back together. As described below, the absolute least that defendant can do to acknowledge the role that he played in exploiting these two humans for his own personal gain, the parties have agreed that defendant should pay restitution of at least $ 2000.00 to each of the two identified victims.

Consequently, the government recommends that this Court accept the binding agreement and sentence Mr. Ahmad to 63 months' imprisonment followed by at least 5 years of supervised release, and restitution to his victims so that they might finally put this whole tragic saga behind them.

## **GOVERNMENT'S POSITION REGARDING RESTITUTION**

The Victims of Trafficking and Violence Protection Act incorporates the Trafficking Victims Protection Act of 2000 ("TVPA"). *See* 22 U.S.C. § 7101 et seq. (2008). The restitution provision of the TVPA, 15 U.S.C. § 1593 provides for mandatory restitution to victims,[1] "in addition to any other civil or criminal penalties authorized by law," and notwithstanding the provisions of MVRA. *See* 18 U.S.C. § 1593(a) (2008). Under the TVPA, victims of forced prostitution can obtain monetary restitution, even if the victims' earnings were derived from illegal conduct. *See United States v. Mammedov*, 304 Fed. Appx. 922, 926 (2d Cir. Dec. 30, 2008) ("Even if they engaged in illegal conduct, the women involved here were still . . . victims."). Also, orders of restitution under the TVPA are to be issued and enforced

---

[1] *See U.S. v. Palmer*, 643 F.3d 1060, 1066 (8th Cir. 2011) (concluding that the defendants convicted of commercial sex trafficking of a child were required to pay mandatory restitution under MVRA).

in accordance to the provisions of the MVRA. The TVPA focuses on how to calculate the victim's economic losses. As a result, when it comes to lost income, "the term 'full amount of the victim's losses' . . . shall . . . include the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act." 18 U.S.C. § 1593(b)(3). Thus, where the value of the victim's labor to the defendant cannot be easily determined (such as in the case of forced prostitution), restitution can be awarded by calculating the defendant's ill-gotten gains. *See United States v. Kuo*, 620 F.3d 1158, 1164 (9th Cir. 2010).

As the Court knows, the issuance of a restitution order under the MVRA or TVPA is mandatory. *See* § 2259(b)(4)(A). Unlike with a fine, a court may not decline to issue an order under this section because of the economic circumstances of the defendant. *See* § 2259(b)(4)(B)(i). But a restitution order "may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments." § 3664(f)(3)(B); *see United States v. Lewis*, 791 F. Supp. 2d 81, 95 (D.D.C. 2011) (finding it appropriate to require only nominal periodic payments in satisfaction of the restitution order because of the defendant's limited financial ability); *see also United States v. Olivieri*, No. 09-743 (WHW), 2012 WL 1118763 (D.N.J. Apr. 3, 2012) (permitting the defendant to participate in an inmate financial responsibility program through which he could make payments in equal monthly installments of $50). In the present case, the parties have agreed to set the amount of restitution at not less than $ 2000.00 per victim. As of the filing of this memorandum, the government has not received any request or support for additional restitution beyond that to which the parties have already agreed. Therefore, the government requests that the Court order defendant to pay restitution to each J.O. and A.O. in the amount of $ 2000.00 for a total of $ 4000.00, as recommended by the PSR. [*See* PSR, at Sentencing Recommendation, page 5.]

It should be noted for the Court that at the time of his arrest, defendant had in his possession $1185.00 in cash, which the FBI has held as evidence since the arrest and defendant has requested be

turned over to his mother. The government has not sought forfeiture of this amount, but would request that the court order it be used to pay the initial installment of the amount due in restitution to the victims.

## **CONCLUSION**

For all of these reasons, the government respectfully recommends that this Court sentence the defendant to the low-end of the advisory guideline range, or 63 months in custody, at least 5 years of supervised release, and to pay restitution in the amount of $ 2000.00 per victim, for a total of $ 4000.00. Such a sentence would be sufficient but not greater than necessary to address the defendant's criminal activities.

Respectfully submitted,

MELINDA HAAG
United States Attorney

Dated: June 25, 2015

/s/
AMIE D. ROONEY
Assistant United States Attorney

.